## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RODERICK BENNETT,**                                      CIVIL ACTION
    **Plaintiff**

**VERSUS**                                                NO.  24-1960

**DG LOUISIANA, LLC, ET AL.,**                            SECTION: "E"(5)
    **Defendants**

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant, DG Louisiana, LLC ("Defendant").[1] Plaintiff, Roderick Bennett, ("Plaintiff") filed an opposition to the motion.[2] Subsequent to this Court's order,[3] Plaintiff filed an amended opposition with a revised statement of contested facts.[4] Defendant filed a reply.[5]

## BACKGROUND

### I.    Factual Background

This case arises out of shooting that occurred at a Dollar General store in New Orleans, Louisiana. Plaintiff alleges that on April 11, 2023, he visited the Dollar General store on South Claiborne Avenue to purchase automative fluid for his car.[6] Plaintiff alleges he selected the automative fluid and proceeded to the register to pay.[7]

Petitioner alleges that, at the register, "a verbal argument between [Plaintiff] and [D]efendants' cashier began due to the price the cashier charged for the item versus the price petitioner believed the item actually cost."[8] Plaintiff alleges the argument continued

---

[1] R. Doc. 22.
[2] R. Doc. 25.
[3] R. Doc. 26.
[4] R. Doc. 27.
[5] R. Doc. 29.
[6] R. Doc. 1-2, p. 2.
[7] *Id.*
[8] *Id.*

as he "paid for the item, collected the item, and proceeded to the exit."[9] The cashier followed him as he made his way to the exit.[10] Plaintiff alleges that he "turned towards the employee, approached him and confronted him as he pulled his phone from his pants pockets."[11] Plaintiff alleges that, as he started to retreat from the encounter, the cashier "pulled a gun from underneath his clothes and fired one shot striking [Plaintiff] in the torso."[12]

Plaintiff asserts negligence claims against Defendant-employers "and their . . . employee (cashier)" for "failing to exercise reasonable care to protect its patrons and customers;" "negligent hiring, training, and supervision of its employee;" "failing to provide adequate security for the protection of customers;" "failing to restrain a perpetrator of violence;" and "any and all other acts of negligence and omissions."[13]

## II.    Procedural Background

On April 10, 2024, Plaintiff filed suit against Dollar General Corporation d/b/a Dolgencorp, LLC and DG Louisiana, LLC in New Orleans Civil District Court.[14] Defendants removed the action to this Court August 7, 2024.[15]

Defendant filed its motion for summary judgment on December 6, 2024.[16] Defendant argues it is not vicariously liable for the intentional tort committed by the cashier-employee because he was not acting in the course and scope of his employment-related duties at the time of the intentional tort.[17] Defendant further argues that Plaintiff cannot establish his claim for negligent hiring, training, and supervision of the cashier

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 3.
[14] *See generally id.*
[15] R. Doc. 1.
[16] R. Doc. 8.
[17] R. Doc. 8-1, p. 7.

because "there is no evidence to suggest Dollar General was negligent in the hiring, supervision, or training of the cashier," and it is not "reasonably foreseeable that an employee with a good employment record would blatantly violate company policies and shoot a customer."[18]

Plaintiff initially filed his opposition to the motion for summary judgment on January 14, 2025.[19] Plaintiff also filed a "Motion to Continue," wherein Plaintiff indicated "he need[ed] additional time to conduct discovery . . . . Furthermore, Plaintiff needs to locate a witness whose whereabouts have been unknown . . . ."[20] The Court construed Plaintiff's Motion to Continue as invoking Rule 56(d)[21] and permitted Plaintiff time to take additional discovery.[22]

Plaintiff filed a revised opposition and renewed his motion to continue.[23] The Court granted the motion to continue and extended Plaintiff's time to oppose the motion for summary judgment.[24] Plaintiff timely filed his opposition and amended statement of disputed facts.[25]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[18] *Id.* at pp. 7-8.
[19] R. Doc. 11. The response was subsequently marked deficient by the Clerk's office for failure to provide a statement of material facts.
[20] R. Doc. 13.
[21] *See Thaggard v. CSX Transportation, Inc.*, No. CV 22-1069, 2023 WL 2527135, at *1 (E.D. La. Mar. 15, 2023) ("Although Rule 56(d) states that a nonmovant must file an affidavit or declaration supporting the requested continuance, 'so long as the nonmoving party indicates to the court by some equivalent statement, preferable in writing of its need for additional discovery, the nonmoving party is deemed to have invoked the rule.'") (quoting *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1266-67 (5th Cir. 1991) (quotations and citations omitted)).
[22] R. Doc. 15.
[23] R. Doc. 17. Plaintiff represented that he still needed to locate a witness whose whereabouts have been unknown.
[24] R. Doc. 21.
[25] R. Doc. 25; R. Doc. 27.

of law."[26] "An issue is material if its resolution could affect the outcome of the action."[27] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28] All reasonable inferences are drawn in favor of the nonmoving party.[29] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[30]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[31] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[32]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to

---

[26] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[27] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[30] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[31] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[32] *Celotex*, 477 U.S. at 322-24.

establish an essential element of the nonmovant's claim.[33] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[34] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[35] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[36] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[37] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its

---

[33] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[34] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[35] *Celotex*, 477 U.S. at 332-33.
[36] *Id.*
[37] *Id.* at 332-33 & n.3.

ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[38]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[39]

## UNDISPUTED FACTS

The following facts are undisputed. Plaintiff seeks damages from the Defendants for injuries allegedly sustained as a result of a shooting incident.[40] The shooting incident occurred at a Dollar General store located at 2841 S. Claiborne Avenue, New Orleans, Louisiana, on April 11, 2023.[41] The incident was captured on Dollar General's CCTV system.[42] The Dollar General employee involved in the incident was a cashier, Jerone Perkins.[43] Jerone Perkins is a former Dollar General employee.[44] Jerone Perkins was not charged with a crime in connection with the shooting incident.[45]

## DISPUTED FACTS

Defendant states it is an undisputed fact that Plaintiff does not know why the cashier shot him.[46] Plaintiff disputes this and states he has testified that "the

---

[38] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[39] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[40] R. Doc. 8-2 at ¶ 1 (citing R. Doc. 1-2).
[41] *Id.*
[42] *Id.* at ¶ 2 (citing R. Doc. 8-3, p. 18).
[43] *Id.* at ¶ 7 (citing R. Doc. 8-3, p. 23).
[44] *Id.*
[45] *Id.*
[46] *Id.* at *Id.* at ¶ 3 (citing R. Doc. 8-3, p. 19).

misunderstanding between he [sic] and the defendant on April 11, 2023 was coming from the price of the power steering fluid."[47]

Defendant states it is an undisputed fact that any "argument regarding the price of Plaintiff's steering fluid ended prior to the alleged shooting."[48] Plaintiff dispute this and states that, while the "argument between Mr. Bennett and Mr. Perkins began at the register with the price that was charged for the power steering fluid," the argument continued to escalate as Mr. Perkins threw the power steering fluid on the counter "after Mr. Bennett paid; "Mr. Perkins simultaneously [was] prancing back and forth, stomping his feet;" and "Mr. Perkins follow[ed] Mr. Bennett as Mr. Bennett proceed[ed] to walk from the register towards the exit."[49]

Defendant states it is an undisputed fact that Plaintiff, Roderick Bennett, was arrested and charged with illegal possession of a firearm and aggravated assault with a firearm in connection with the incident.[50] Defendant also states it is an undisputed fact that Plaintiff was convicted of illegal possession of a firearm.[51] Plaintiff admits that he was "charged and convicted under La. R.S. 14:95.1, Possession of firearm or carrying concealed weapon by a person convicted of certain felonies," but disputes the remainder of the statement and states he "was in possession of a phone when he was shot," "testified he did not have a gun," and no firearm was recovered at the scene.[52]

Defendant states it is an undisputed fact that Plaintiff has no evidence to establish that the alleged shooting was "in furtherance of Dollar General's interests."[53] Plaintiff

---

[47] R. Doc. 27-1 at ¶ 3 (citing R. Doc. 8-3, pp. 12, 14, 15).
[48] R. Doc. 8-2 at ¶ 4 (citing R. Doc. 8-3, p. 18).
[49] R. Doc. 27-1 at ¶ 4 (citing R. Doc. 8-3, pp. 13-14).
[50] R. Doc. 8-2 at ¶ 5 (citing R. Doc. 8-3, pp. 23-24).
[51] *Id.* at ¶ 6 (citing R. Doc. 8-5).
[52] R. Doc. 27-1 at ¶¶ 5, 6 (citing R. Doc. 8-5; R. Doc. 8-3, pp. 14, 28).
[53] R. Doc. 8-2, at ¶ 9. Defendant fails to cite any record evidence in support of this fact.

disputes this and points to evidence that the argument between Mr. Bennett and Mr. Perkins began at the register over the price of the power steering fluid and escalated, resulting in Mr. Perkins throwing the steering fluid on the counter, "prancing back and forth, stomping his feet," and following Mr. Bennett as Mr. Bennett began to walk towards the exit.[54]

## LAW AND ANALYSIS

**I.    The cashier was not acting in the scope of his employment when he allegedly shot the Plaintiff.**

In its motion for summary judgment, Defendant argues the undisputed facts demonstrate Defendant is entitled to summary judgment that it is not vicariously liable for the cashier's allegedly tortious acts because the cashier was not acting in the course and scope of his employment during the incident.[55] Defendant contends that the cashier's tortious conduct was "neither employment rooted, nor was it reasonably incidental to the performance of the cashier's duties."[56] As a result, Defendant argues Plaintiff cannot hold Defendant liable as a matter of law for the cashier's negligence.

"Where federal jurisdiction, as here, is based on diversity, [the Court] applies the substantive law of the forum state—[Louisiana]."[57] Louisiana Civil Code Article 2320 "provides the basis for holding an employer liable for the acts of [its] employee."[58] "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."[59] Generally, "[a]n

---

[54] R. Doc. 27-1, at ¶ 9 (citing R. Doc. 8-3, pp. 13-14).
[55] R. Doc. 8-1, p. 7.
[56] *Id.*
[57] *Pearson v. BP Products North America, Inc.*, 449 F. App'x 389, 390 (5th Cir. 2011).
[58] *Woolard v. Atkinson*, 988 So. 2d 836, 840 (La. Ct. App. 2nd Cir. 2008).
[59] LA. C.C. ART. 2320.

employer's vicarious liability for conduct not [its] own extends only to the employee's tortious conduct which occurs within the course and scope of that employment."[60]

"[I]ntentional harms can be within the scope of employment, but the employer will not be held liable unless the employee's intentional act was committed in furtherance of his employer's business."[61] "[T]ortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest."[62] "An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours."[63]

In *LeBrane v. Lewis*, the Louisiana Supreme Court enumerated five factors that are relevant in determining whether an employee was acting in the course and scope of his employment:

> (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.[64]

In *Orrill v. Ram Rod Trucking*, the Louisiana Fourth Circuit analyzed whether a truck driver employed by the Defendant could hold his employer vicariously liable when, after the employee got into a car accident, the employee threatened the other driver at gunpoint.[65] The court held that, although the employee "was engaged in performance of

---

[60] *Id.* at 838 (citing *Orgeron v. McDonald*, 639 So. 2d 224 (La. 1994)).
[61] *Strawder v. Harrall*, 251 So.2d 514, 516 (La. Ct. App. 1st. Cir. 1971).
[62] *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (quoting *Barto v. Franchise Ents., Inc.*, 588 So. 2d 1353, 1356 (La. Ct. App. 2d Cir. 1991)).
[63] *Id.* (citing *Scott v. Commercial Union Ins. Co.*, 415 So. 2d 327, 329 (La. Ct. App. 2d Cir. 1982)).
[64] *Id.* at 996-97 (citing *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)).
[65] *Orrill v. Ram Rod Trucking*, 557 So. 2d 384, 388 (La. Ct. App. 4th Cir. 1991) (citing *LeBrane*, 292 So.2d 216).

his duties when the accident occurred, his actions could, in no manner, be considered as benefitting his employer's business."[66]

In *Williams v. Domino's Pizza Inc.*, another section of this court analyzed whether an employee delivery driver for Domino's could hold Domino's vicariously liable for threatening a customer at gunpoint during a pizza delivery.[67] The Court held that, although the delivery driver was acting in the *course* of his employment, his act of threatening a customer with a handgun was not in the *scope* of his employment:

> [A]though [the employee] was in the process of delivering a pizza, clearly a duty with which he was charged, his act of procuring the handgun and threatening the Plaintiff amounted to a departure from the scope of his authority, which was in no way associated with the responsibilities devolving upon him. [T]he employee was not authorized to use[] a handgun in connection with his duties as an employee of RPM. Rather, he was expressly forbidden to carry any weapon and was immediately terminated upon RPM's learning of his possession of a firearm during work. Accordingly, the Court finds that [the employee]'s tortious conduct . . . was not within the scope of his employment with RPM.[68]

In *Strawder v. Harrall*, a gas station employee shot the plaintiff in the leg after the plaintiff purchased cigarettes from the employee.[69] Like the court in *Williams*, the court in *Strawder* reasoned found "[t]here can be no doubt that [the employee] was in the *course* of his employment at the time that [plaintiff] was shot, inasmuch as the incident occurred during . . . employment hours, on his employer's premises, and while he was concluding the sale of cigarettes to [plaintiff] as per his employment instructions."[70] However, the *Strawder* court held that the employee was not acting in the scope of his employment when he shot the plaintiff because "although [the employee] had been in the

---

[66] *Id.* The court further recognized the fact the incident occurred off-premises from the workplace was significant.
[67] *Willams v. Domino's Pizza Inc.*, No. CIV.A. 00-1043, 2001 WL 6724 (E.D. La. Jan. 2, 2001).
[68] *Id.* at *4.
[69] *Strawder v. Harrall*, 251 So. 2d 514, 516 (La. Ct. App. 1st Cir. 1971).
[70] *Id.*

process of selling a package of cigarettes, clearly a duty with which he was charged, his act of procuring the shotgun and shooting the [plaintiff] amounted to a departure from the [s]cope of his authority, which was in no way associated with the responsibilities devolving upon [him]."[71]

It is undisputed that the incident occurred on Dollar General premises during work hours such that the former Dollar General employee was acting in the *course* of his employment at the time of the incident.[72] Plaintiff emphasizes the connection between the argument over the steering fluid pricing to the eventual shooting incident to argue the shooting was in the scope of the cashier's employment,[73] but this temporal connection does not show the shooting was employment-rooted. Although the cashier had been in the process of performing a work-related duty in the initial transaction with Plaintiff, his act of pulling out a gun was no longer in the scope of his employment responsibilities. Plaintiff makes no allegations that, if true, would establish the cashier's intentional act was in furtherance of his employer's business. Even construing the allegations of the complaint in the light most favorable to Plaintiff, no jury would find the cashier's acts to be in the scope of his employment.[74] The cashier's tortious act of shooting the Plaintiff was not in furtherance of Dollar General's business, and Defendant cannot be held liable as a matter of law.

---

[71] *Id.* at 517. The court also collected cases finding employers vicariously liable when the alleged wrongful act was committed "while performing an authorized act," such as for claims against police officers using excessive force during an arrest, security detail, or bouncers at a night club who were hired to eject unruly customers. *Id.*

[72] *Id.* at 516-17 ("There can be no doubt that [the cashier] was in the course of his employment at the time that [Plaintiff] was shot, inasmuch as the incident occurred during . . . employment hours, on his employer's premises, and while he was concluding the sale . . . to [Plaintiff] as per his employment instructions.").

[73] R. Doc. 27-1, at ¶¶ 8, 9.

[74] For example, Plaintiff did not produce any evidence that the cashier was authorized to possess or use a gun at work that would lead the Court to infer that the employee was performing an "authorized act" in the scope of his employment.

**II.    The motion is denied as to Plaintiff's claims for negligent hiring, training, and supervision.**

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[75] "[A] party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record."[76] "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response."[77] The Court need not consider whether the non-moving party has met its burden of proof.[78]

Defendant seeks summary judgment on Plaintiff's claims for negligent hiring, training, and supervision on the basis that[79] "there is no evidence to suggest Dollar General was negligent in the hiring, supervision, or training of the cashier."[80] However, Defendant fails to affirmatively demonstrate that there is no evidence in the record to support a judgment for the Plaintiff. Defendant also fails to address the negligent hiring claims in its statement of uncontested facts.[81] Because Defendant has failed to affirmatively demonstrate the absence of evidence in the record in support of Plaintiff's claims, it has failed to meet its initial burden, and the motion for summary judgment must be denied as to these claims. Accordingly;

---

[75] *Celotex Corp. v. Catrett*, 477 U.S. 317, 331-32 (1986) (Brennan, J., dissenting).
[76] *Id.* at 332.
[77] *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024) (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).
[78] *Celotex*, 477 U.S. at 332.
[79] R. Doc. 8-1, pp. 7-8.
[80] *Id.* at p. 8.
[81] *See* R. Doc. 8-2.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment[82] is **GRANTED IN PART** and **DENIED IN PART.**

Judgment is granted in Defendant's favor against Plaintiff on the issue of Defendant's vicarious liability for the cashier-employee's intentional acts.

Judgment is denied on the claim that Defendant negligently hired, trained, or supervised the cashier-employee.

**New Orleans, Louisiana, this 27th day of May, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[82] R. Doc. 8.